[Civ. No. 7043. First Appellate District, Division One.—June 17, 1930.]

E. J. DUPUY, Respondent, v. BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Appellants.

Piccirillo & Wolf for Respondent.

Sullivan & Barry and Theo. J. Roche, *Amici Curiae.*

PARKER, J., *pro tem.*—Plaintiff brought this action for the issuance of a writ of mandate against the defendants to enforce the payment of a salary demand arising out of services alleged to have been rendered as a teacher in the public schools of the city and county of San Francisco.

The defendants include the Board of Education of the said City and County, the individual members of the said board, the Superintendent of Public Schools of said City and County and the Auditor.

The plaintiff, in addition to his own demand for services rendered, is the assignee of a large number of others similarly situated and the entire proceeding admittedly belongs to that class euphoniously referred to as friendly suits. In view of the fact that the controversy involved claims arising at different dates and in different amounts, proof was offered in support of but one or two claims and it was stipulated that the same proof might be considered as being before the court as to the remaining claims.

The purpose of the suit was to have but one point of law finally determined and while, perhaps perfunctorily, other claims were advanced, it is conceded that the main point of controversy surrounds a construction of certain sections of the Political Code, to be hereinafter detailed.

As stated hereinbefore, the plaintiff's claim arises out of a salary demand for services rendered as a teacher in the public schools of the city and county of San Francisco, a municipality of the state, operating under a local charter. Likewise the general duties of the various defendants, including the defendant board, are to some extent outlined

or circumscribed by the provisions of the said charter. However, both parties to the controversy seem in accord to the effect that the question submitted for decision is in no sense a municipal affair and that a solution thereof must be through interpretation and construction of the general statutes governing, independent of the local charter. (*Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730].)

The facts are practically admitted. Plaintiff, engaged as a teacher as aforesaid, rendered service for the full school year of 1925–1926, which school year commenced on July 1, 1925, and ended on June 30, 1926. (Pol. Code, sec. 1670.) The date upon which school opened and the services of plaintiff in teaching commenced was August 16, 1925. On September 1st he received a warrant authorizing and directing payment for the service rendered in August, the half month. For each succeeding month he received his regular compensation up to and including June, 1926, when the school year ended. The warrant received at the end of each of said months represented and was payment for the services of that particular month. The result was that for the year 1925–1926 plaintiff had been paid for ten and one-half months' actual teaching, but had received no compensation for the first month and one-half of the school year, namely the month of July and one-half of August. It is for this period of time that the present suit was brought. The controversy, as indicated, is to be determined by a construction of section 1609 of the Political Code. Such is conceded by both sides, in so far as this phase of the case may be involved. Section 1609 of the Political Code, as far as it is necessary to be considered here, reads as follows:

"Pay:—Any board of trustees, or city, or city and county board of education may arrange to pay the teachers or principals so employed by them in ten or eleven or twelve equal payments instead of by the school year, provided, however, that where the board of trustees or city or city and county board of education arranges to pay the teachers or principals so employed by them in twelve equal payments for the year, they shall begin such payments on the first day of the calendar month following the opening of schools for the current year in all cases where school is opened during the month of July, and in all cases

where school is not opened during the month of July, the board of trustees or city boards or city and county boards of education may withhold such warrant or warrants as may have fallen due prior to the opening of school until the teachers or principals so employed by them shall have returned to the employment for which they were engaged by the board of trustees or the city or city and county board of education and shall have resumed their respective duties, and then such payments shall be continued from month to month on the first day of each calendar month thereafter until said teachers have been paid the full amount due to them for that fiscal year; provided, that a teacher who serves less than a full school year is entitled to receive as salary only an amount that bears the same ratio to the established annual salary for such position as the time he teaches bears to the annual school term.''

It is conceded that the plaintiff, as well as the assignors upon whose claims he sues, comes within the provisions of this section. The able briefs of respective counsel, and the brief of *amici curiae* filed herein, cite us to no authority assuming to construe this section. The briefs are purely argumentative, each party advancing his views concerning what was the legislative intent. No purpose can be served by cataloging the various contentions, because when each argument is reviewed the net result would be a mere reiteration of possible construction, and could not serve as authority upon which could rest the ultimate finding of this court. Therefore we must be guided, at the outset, by such general rules of construction as are universally used in solving similar questions.

From a reading of the section it is apparent that there is no ambiguity therein. The wording is plain and by giving the words employed their usual and ordinary meaning the section readily discloses the legislative intent and with that disclosed the task is practically concluded. Likewise, we are mindful of the rule that all parts of a statute are to be read together and meaning given to each, consistent with the general intent of the whole. Before proceeding further, it might here be noted that it is an admitted fact that the plaintiff and all other teachers whose claims are involved were employed at an annual salary rate. Returning then to the code section under examina-

tion, we find there outlined a complete plan of payment, covering all possible situations. The section expressly provides for the division of the annual salary into twelve, ten or eleven *equal* payments. It is manifest that these equal parts, whether it be twelve, eleven or ten must exhaust the whole. The section quoted further provides as follows: ''Whenever the first day of the month falls upon a holiday, payment of the teachers' salary shall be paid on the following day.'' From this it follows that the plan of payment contemplated was at monthly intervals and a reasonable, almost necessary construction of the statute would be that these monthly payments must be consecutive. Therefore, a board of education, after determining the school term, may then determine the mode of payment of the teacher's salary. Let us take an arbitrary standard of salary, merely for the purposes of illustration and construction. The teacher's salary is fixed at $2,400 per year. The board determines that this amount shall be paid in twelve equal payments, which would be at the rate of $200 each payment. The school year starts in July. On the 1st of August there would be due the teacher the sum of $200 and a like amount on the first of each succeeding month. Yet, the school term has been designated so that actual teaching does not begin until August 16th. Therefore, it has been provided that the board may withhold such warrants as may have become due prior to the date of opening. The language of this provision clearly indicates the legislative intent to be that irrespective of the delay in the opening of the school term the money for the first six weeks is due the teacher. Otherwise, the words ''which may have fallen due'' would be without meaning. The term ''withhold'' further illustrates the same intent. ''Withhold,'' indicating the usual meaning, namely, to refrain from paying that which is due. The power and right to withhold is limited by the terms of the statute to the time when the teacher resumes service, that is to the time the school term commences. This limitation, however, is controlled by the provision that any teacher who serves less than a full school year is entitled to receive as salary only an amount that bears the same ratio to the established annual salary for such posi-

tion as the time he teaches bears to the annual school term.

As a matter of generally accepted statutory construction, a proviso is used to limit and qualify what immediately precedes it and to expressly negative a construction that would prevail in the absence of the said proviso. It is likewise a general rule that what is excepted by the proviso, would in the absence thereof be included in the general words of the statute. Therefore, it seems manifest that in the absence of the restriction of the proviso, the general wording of the statute authorized and directed the salary payments in such a manner that a teacher would receive payments for time not given to teaching. The effect and intent of the statute, as a whole, limited as noted, is that the salary is due for the idle period with the power in the board to withhold the same until active service begins. Under this general wording the day that the school term begins the teacher is entitled to the withheld salary, payable on the first day of the succeeding month. But, restricted by the proviso, no more can be paid than will be in the ratio indicated. The wording of the proviso is significant as illustrating the intent. It is provided that the teacher shall not *receive* any amount excepting such an amount bearing the same ratio to the established *annual* salary as the time he teaches bears to the annual school *term*. As a matter of common understanding, the word "term" in school affairs is easily distinguishable from the word "year." For further purposes of concrete illustration, let us assume that the school term is fixed at ten months. A teacher who teaches one month has taught one-tenth of the school term. Accordingly, he would be entitled to one-tenth of the annual salary. Further illustrating: Where the annual salary was $2,400, the payments would be divided into twelve payments of $200 each. If the school term were fixed at ten months commencing on September 1st, the teacher upon resuming or rather commencing his actual service would be entitled to the two months already passed, namely, the sum of $400, in the absence of the proviso. In any event, the money would be due him, but withheld, until his teaching period had reached the ratio required. But at the end of each month he would be entitled to all that was then due him and there would

be due him the salary for that month, plus the proportion of the withheld amount. Therefore, on his first salary date he would be entitled, in the case illustrated, to receive the sum of $240, being the salary plus one-tenth of the withheld money. These payments continuing throughout the ten months' school term would equal the entire yearly salary and would be in accord with both the letter and the spirit of the statute. Whatever may be the fixed term or whatever may be the amount of annual salary, this construction will apply. An objection to this construction lies in the language of the section to the end that the payments, whether twelve, eleven or ten, shall be equal. Giving effect to the proviso this result cannot be accomplished unless through some change in the law whereby a school term is enlarged to embrace the entire year. As long as the term remains less than the entire year, and the language of the proviso restricts the amount a teacher may receive, as it does, there cannot be twelve equal payments. However, if the school term is fixed at eleven or at ten months, there can be eleven or ten equal payments.

The construction given avoids the complaint that teachers may have received in advance moneys they may not retain and therefore the question asked as to how the county might recover back the advanced money needs no answer. In any event, by a not too close construction every part of the section could be given meaning by holding that while the money is not paid directly to the teacher in twelve equal payments nevertheless there are, as a matter of account, twelve equal payments because the money subsequently paid, as the term progresses, represents withheld money, chargeable to the payments due as of the months embraced in the preterm period. With this construction it follows that the judgment of the court below must be affirmed, in this particular.

■ Other grounds are urged by appellant, which need further comment. It is urged, that conceding the correctness of the lower court's ruling mandate is not the proper remedy. It will be noted that the claim of plaintiff involves no terms of employment or dispute over services rendered. All that is involved is whether or not moneys, conceded to have been earned, are now due. All that remains is the issuance of the warrant and this is a minis-

terial duty enjoined by law. In such a case mandate will lie. (*Goldsmith* v. *Board of Education*, 63 Cal. App. 142 [218 Pac. 296]. See, also, cases therein cited. 16 Cal. Jur. 792.)

█ Appellants next urge that the claim of plaintiff, and the claims assigned to him, cannot be enforced by reason of the statute limiting the time within which actions may be brought. In other words, the claims are outlawed.

This claim is based upon the disclosed and admitted fact that some of the teachers whose claims are involved were employed many years before action commenced. The appellant argues that if the moneys should have been paid them at the end of the first year and were. not paid then, the statute began to run. The fact is that at all times it was and is conceded that the money rightfully belonged to these claimants and the practice is that this money is withheld until a teacher dies or otherwise terminates his service permanently, when the withheld portion is then paid. In other words, the moneys accruing, whether the earlier years or the last is credited to the teacher's account and paid at the cessation of service, being at all times an acknowledged debt withheld. It has all of the characteristics of a trust fund and after apportionment or acknowledgment the fund is no longer a portion of the county or city and county funds, but held subject to the claim of the teacher. The statute would not begin to run until a refusal to pay or a direct repudiation of the trust.

It is conceded that the employment of the teachers was a continuous employment with salary payable and paid monthly over the entire period of employment. By its system of accounting and by written resolution of the Board of Education, the city and county has continuously admitted the obligation and in effect has told each and all of the teachers that the balance accrued was being held in the treasury to be paid upon a permanent withdrawal from the service. Under this state of the record, the plea of the statute of limitations cannot avail when the action is commenced within the legal period after a repudiation of the obligation. In this connection it might be further noted that the defendant, even now does not repudiate the obligation, but in the court below and here it affirmed and affirms its willingness and its duty to pay, in the

manner most convenient to its system of accounting. Indeed, it seems throughout, that the issue here is between law and expediency.

■ Lastly, appellant contends, that whatever may be the construction of the statute, the plaintiff bases his claim upon services rendered during the months of July and August, 1926, and that he has received payment for the services rendered during that period. This seems a begging of the question. Under a system of disbursement it might be shown that certain cashed warrants indicated that the money paid covered portions of the periods here in dispute. But the fact is admitted that such payments did not cover nor were they intended to cover the amounts herein claimed. It is not questioned but that a municipality or other public agency is entitled to and should in legitimate defense avail itself of every defense authorized by the law. However, in the discharge of its obligations and particularly in dealing with a class, such as here, whose service is so essential to the very existence of any form of civilized government, resort should not be had to finesse or palpable evasion of liability.

Throughout this entire proceeding the appellant has admitted the withholding of the money claimed and it would ill comport with the accepted theory of the case to attempt now to build up a holding of payment in the present state of the record.

The trial court found that payment had not been made and there is abundant evidence to sustain that finding. The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 17, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1930.